1    **UNITED STATES DISTRICT COURT**

2    **DISTRICT OF NEVADA**

3
   United States of America,                   Case No. 2:13-cr-250-JAD-VCF

4
       Plaintiff

5                                    **ORDER RE: MOTIONS TO**
   v.                          **EXCLUDE EXPERT TESTIMONY**

6
   Robert Kane, et al.,                [126, 127, 131, 137, 147,

7                                        149, 161 & 166]
       Defendants

8

9    Defendants in this Hobbs Act extortion-conspiracy case move to preclude the testimony of

10    ATF Special Agent John Carr, offered by the government to testify about the violent, criminal

11    propensities and practices of the Vagos Motorcycle Club, of which the defendants are alleged to be

12    members.  I find that the bulk of Agent Carr's proposed expert opinions is irrelevant, unduly

13    prejudicial, or inadmissible organizational character evidence, so I grant the motions in part.

14    Because I find that Agent Carr's testimony regarding the Vagos organization's internal structure and

15    operations—and his insider help with decoding Vagos terms or concepts—may be relevant, however,

16    I reserve my ruling on these limited topics until after an evidentiary hearing on Agent Carr's

17    qualifications.

18                            **Background**

19    Defendants Robert Kane, William Congero, Steven Carr, Robert Coleman, Eric Panter, and

20    Thomas McNamara are charged with conspiracy to interfere with commerce by extortion for their

21    alleged roles in the beating and extortion of their former Vagos Motorcycle Club brother, L.T.[1]  The

22    government alleges that the defendants lured L.T. to another motorcycle group's clubhouse under the

23    false pretense of needing to "handle" Vagos business.  Once L.T. was inside, his Vagos brothers

24    insisted he turn over the title to his car and his gun, beat him, took his wallet and his motorcycle, and

25    demanded L.T. promptly come up with $5,000.[2]  Two weeks later, Congero and Panter tried to break

26    _____

27    [1] Doc. 1.

28    [2] *Id.*; Doc. 158 at 2–3.

into L.T.'s house while his stepchildren were home alone.[3]

At trial, the government intends to offer the testimony of L.T. and of Sean Hall, the President of the motorcycle group whose clubhouse L.T. was lured to.[4]  It also intends to offer the testimony of an outlaw-motorcycle-gang (OMG) expert, John Carr, a special agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives.  The government's notice of expert testimony discloses that "Special Agent Carr will testify as an expert in relation to motorcycle gangs and their propensity to commit acts of violence on behalf of the club."  It also states that he will opine on these categories of evidence:

1.    that the Vagos "maintain a ready supply of firearms, including handguns, shotguns, and semiautomatic assault rifles"—often unregistered to evade law-enforcement tracing—"in order to enforce" the Vagos organization's authority;

2.    that "Vagos membership includes members or former members of a large number of street gangs";

3.    that "Vagos gang members also enforce the authority of the gang by conspiring to direct attacks against rival motorcycle gangs, such as the 'Hells Angels,' the 'POBOBs,' and the 'Banditos'";

4.    that "Persons in conflict with or who might be perceived to have shown disrespect to the gang may be beaten severely or even killed by being kicked repeatedly with steel-toed boots, stabbed, or shot," and the group "also directs attacks against witnesses who are willing to cooperate with law enforcement";

5.    that Vagos members are "vigilant to the presence or arrival of rival gang members" and "are likely to identify such persons and threaten to beat or kill them";

6.    that members are rewarded with clothing "patches" for committing murder or other acts of violence on behalf of the Vagos;

---

[3] Doc. 158 at 3.  The factual premise of this case is well detailed in Magistrate Judge Ferenbach's order denying defendant Steven Carr's motion to dismiss the indictment for lack of jurisdiction. Doc. 82.  The parties are familiar with these facts, and I do not find it necessary to recount them here.

[4] Doc. 158 at 8.

7.    that Vagos leadership also controls the activities of its members and enforces its authority and internal discipline by assaulting and threatening its own members;

8.    that "A member who is 'out bad' may be required to forfeit his property, especially his motorcycle, and is subject to attack by active Vagos members";

9.    "about the structure and hierarchy of a Vagos [OMG] and about the procedure for initiation into an OMG";

10.   that Vagos members pay fees, dues, and "taxes" that are used, in part, to pay legal expenses of Vagos members prosecuted for crimes committed on behalf of the group; and

11.   that Vagos has a national and international presence, with national leadership comprised of Vagos members from different Vagos chapters in California.[5]

Defendants[6] move to exclude Agent Carr's testimony. They contend that Agent Carr is not qualified to testify as an expert in the Vagos motorcycle club and that, even if he were, his testimony will not aid the jury here because he does not add anything to the facts of this alleged crime that the victim and Hall will not supply. They further argue that Agent's Carr's proposed testimony is not relevant to whether the defendants were involved in the beating and extortion of L.T. and, alternatively, that any slight relevance his testimony may have is substantially outweighed by the danger that his highly prejudicial hearsay testimony about the collective criminal acts and generally bad character of OMGs will result in a guilt-by-association verdict.[7]

I exclude the vast majority of Agent Carr's proposed testimony because (1) it is irrelevant to this case, or any marginal relevance is substantially outweighed by the unfairly prejudicial risk of painting a defendant guilty by mere association or (2) it is organizational character and bad-acts

---

[5] Doc. 124 at 1–5.

[6] Defendant McNamara filed the initial motion to prevent or limit SA Carr's expert testimony. *See* Doc. 126. Defendants Coleman, Kane, and Panter join in this motion. Docs. 127, 131, 137. Defendant Steven Carr filed his own requests to exclude this testimony. Docs. 138 (objections), 147 (motion in limine). Coleman joins in Carr's filings. Docs. 149, 161, 166.

[7] Docs. 126, 138, 147.

1   evidence that must be excluded under Rule 404.  I carve out of these conclusions Agent Carr's

2   testimony about the Vagos internal structure and operations, along with any insider help Agent Carr

3   may provide for decoding OMG terms or concepts.  But because Agent Carr's knowledge of the

4   Vagos organization, specifically, is not evident in his statement of qualifications, an evidentiary

5   hearing is necessary for me to determine if he is qualified to offer this testimony.

6                                              **Discussion**

7   **A.      Much of Agent Carr's Proposed Testimony Is Simply Not Relevant to This Prosecution.**

8           Federal Rule of Evidence 702 governs the admissibility of expert-witness testimony.[8]  One

9   requirement for admissibility is that the expert's knowledge "will help the trier of fact to understand

10  the evidence or to determine a fact in issue."[9]  Essentially, this is a relevancy requirement.  Evidence

11  is relevant under FRE 401 if it "has any tendency to make a fact more or less probable than it would

12  be without the evidence" and "the fact is of consequence in determining the action."[10]  Even relevant

13  evidence may be excluded under FRE 403 "if its probative value is substantially outweighed by a

14  danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time,

15  or needlessly presenting cumulative evidence."[11]

16          The government has not demonstrated that the bulk of Agent Carr's proposed testimony is

17  relevant to this case or necessary to prove any element of the offense of indictment.  For example,

18  that the Vagos have an arsenal of (often illegal) firearms, enforce the club's authority by conspiring

19  to direct attacks against the Hells Angels, the POBOBs, and the Banditos, and count former street-

20  gang members among their ranks (categories 1–3 above) has no relevance to this case.  Neither are

21  the Vagos general initiation procedures (category 9).  The general procedures employed by the Vagos

22  when initiating members are irrelevant; only the procedures employed for L.T. to transfer or "patch

23  over" to the Vagos club—which L.T. can testify to—have any relevance here.  And there is presently

---

25  [8] Fed. R. Evid. 702.

26  [9] Fed. R. Evid. 702(a).

27  [10] Fed. R. Evid. 401.

28  [11] Fed. R. Evid. 403.

no allegation that the defendants perpetrated the acts charged in the indictment with illegal firearms, that the Hells Angels, POBOBs, or Banditos were in anyway involved, or that any of the defendants is a former street-gang member.  Expert testimony on these expert topics must therefore be excluded from this prosecution under FRE 401.  To the extent Agent Carr's opinions on these issues have any relevance, their probative value is substantially outweighed by a danger of unfair prejudice, wasting time, or needlessly presenting cumulative evidence, and I exclude these opinions under FRE 403.

**B.    The Bulk of the Proposed Opinion Testimony Is Inadmissable Hearsay and Institutional Character Evidence.**

Agent Carr's opinions that the Vagos have beaten or killed rivals, cooperators, and even their own members; reward themselves with patches for murder and other violent acts;[12] and force members who are "out bad" to forfeit their motorcycles and other property (categories 3–8 above) are fraught with problems.  First, these opinions are based on unverifiable, anecdotal, hearsay information, making them particularly unreliable.  The source of this information is unclear, but appears at best to be a summary of investigations by others that will not be part of the record of this case.  Presenting it "in the guise of an expert opinion" runs afoul of the Sixth Amendment's Confrontation Clause.[13]

These opinions would also introduce character evidence in violation of FRE 404(a), which provides that "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."[14]  This character evidence has an additional layer of prejudice because it cannot be attributed to any individual defendant in this case.  Rather, it impugns the character of the Vagos organization as a whole and—derivatively—each of its members.  Other circuits have held that permitting an officer expert

---

[12] The reward-patch evidence is also irrelevant and additionally excludable under FRE 401 and 403 because there is no allegation that any defendant was rewarded with a patch for the crime of indictment.

[13] *United States v. Mejia*, 545 F.3d 179, 199 (2d Cir. 2008) (quoting *United States v. Lombardozzi*, 491 F.3d 61, 72 (2d Cir. 2007)).

[14] Fed. R. Evid. 404(a).

to testify to a group's "institutional criminality," even when a member of the group "allegedly engaged in conduct [that] conformed to [its] reputation," is "'inherently and unfairly prejudicial' and would 'deflect the jury's attention from the immediate charges and cause it to prejudge a person with a disreputable past, thereby denying that person a fair opportunity to defend against the offense that is charged.'"[15]  The Ninth Circuit has relied on this sister-circuit authority when similarly suggesting that testimony about a gang's or criminal group's collective criminal activities or generic criminality and violent disposition may not be introduced "so as to infect the trial with the threat of 'guilt by association.'"[16]

This evidence additionally runs afoul of FRE 404(b), which precludes "Evidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."[17]  As the Eighth Circuit panel explained in *United States v. Roark*[18] when reversing a conviction it deemed infected by Hells Angels guilt-by-association references:

> Evidence of uncharged misconduct to show criminal propensity is inadmissible not because it is logically irrelevant, but because it is inherently and unfairly prejudicial.  It deflects the jury's attention from the immediate charges and causes it to prejudge a person with a disreputable past, thereby denying that person a fair opportunity to defend against the offense that is charged.  Therefore, the government's attempt to tie Appellant's guilt directly to his association with the Hells Angels Motorcycle Club constitutes reversible error.

The Ninth Circuit similarly cautioned in *Kennedy v. Lockyer*[19] that "[e]vidence of gang membership may not be introduced . . . to prove intent or culpability," and "the use of gang membership evidence to imply 'guilt by association' is impermissible and prejudicial."

---

[15] *United States v. Street*, 548 F.3d 618, 632 (8th Cir. 2008) (quoting *United States v. Roark*, 924 F.2d 1426, 1434 (8th Cir. 1991)).

[16] *United States v. Santiago*, 46 F.3d 885, 889 (9th Cir. 1995) (quoting *Roark*, 924 F.2d at 1434).

[17] Fed. R. Evid. 404(b).

[18] *Roark*, 924 F.2d at 1434.

[19] *Kennedy v. Lockyer*, 379 F.3d 1041, 1055 (9th Cir. 2004).

1    The government has not demonstrated that the Vagos organization's general reputation or

2 propensity for violence has any relevance to an element of this Hobbs Act offense that could save

3 these opinions from exclusion under FRE 404.  The defendants are charged with conspiracy to

4 interfere with commerce by extortion.[20]  To prove this crime, the government must demonstrate

5 extortion—"the obtaining of property from another, with his consent, . . . under color of official

6 right"[21]—"and a nexus between [the] defendant[s'] acts and interstate commerce."[22]  This is not a

7 racketeering case in which evidence of the practices and habits of a criminal organization are

8 necessary to prove an enterprise or another element of the charged offense.  The only utility the

9 government has demonstrated that this reputation evidence would serve is to imply that the

10 defendants—all Vagos members—acted in conformity with the organization's reputed propensity for

11 violence when they beat and extorted L.T. and attempted to break into his home.  Indeed, the

12 government expressly states that "Carr's testimony is directly related to the charged offense because

13 the defendants acted in accordance with their roles in Vagos and as active members of the Vagos

14 OMG" in committing the instant offense.[23]  Permitting this opinion evidence would "imply 'guilt by

15 association,'" which would be "impermissible and prejudicial."[24]

16 **C.    Although Testimony about the Vagos Internal Structure and Operations Are Relevant, an Evidentiary Hearing Is Necessary to Determine Agent Carr's Qualification to Offer It.**

17

18    Testimony about the hierarchical structure of the Vagos organization; its collection of fees,

19 dues, and taxes; and Vagos's international and national presence (portions of categories 9–11) is,

20 however, relevant to this case.  The government's theory of this case is that L.T. was originally a

21 member of  the American Cruisers Motorcycle club.  Both Vagos and American Cruisers are

22

---

23    [20] Doc. 1.

24    [21] *United States v. Renzi*, 769 F.3d 731, 742 (9th Cir. 2014) (quoting 18 U.S.C. §1951(b)(2)).

25    [22] *United States v. Atcheson*, 94 F.3d 1237, 1240 (9th Cir. 1996), as amended on denial of reh'g (Oct.
26 3, 1996).

27    [23] Doc. 159 at 4.

28    [24] *Kennedy*, 379 F.3d at 1055.

members of the Confederation of Clubs, a conglomerate of motorcycle clubs and OMGs whose

members pay dues and have other obligations to the Confederation.[25]  After the Las Vegas chapter of

the American Cruisers was disbanded, Vagos president, defendant Kane, decided to "patch over"

L.T. and defendant Panter into Vagos.  The two new Vagos members then rode their motorcycles to

California to pick up their new patches.  L.T. could not afford the $750 fee for his patch, so Kane

fronted the money.[26]  L.T. became further indebted to his Vagos brothers when they posted his bail

for carrying a concealed weapon without a permit, and he nevertheless refused to participate in a

mortgage fraud scheme with them.[27]  The defendants then lured L.T. to the Black Knightz OMG

clubhouse on the premise that his assistance was needed to help get the Black Knights to pay their

club "taxes."  When he arrived, defendants beat him; demanded the title to his car, gun, and cash;

and took his Harley-Davidson motorcycle.[28]

Agent Carr's proposed testimony about the national and international presence of Vagos

(based on chapter and leadership locations) and what club dues and taxes mean in the OMG context

is relevant and may be helpful to the jury's understanding of the facts of this case.  These concepts

are, in some ways, unique to the OMG organizations and beyond the ken of the average juror.

Courts generally recognize that officer-experts may properly decode abstract terminology or esoteric

notions uniquely utilized by particular organizations and can explain operations and structure.[29]  As

the Second Circuit cautioned when examining the trending use of officer experts in *United States v.

Mejia*, this type of expertise "must be limited to those issues where sociological knowledge is

appropriate.  An increasingly thinning line separates the legitimate use of an officer expert to

translate esoteric terminology or to explicate an organization's hierarchical structure from the

---

[25] *See* Doc. 82 at 2–3.

[26] *Id*. at 4.

[27] *Id*. at 4–5.

[28] *Id*. at 5.

[29] *See Mejia*, 545 F.3d at 191 (collecting cases); *United States v. Freeman*, 498 F.3d 893, 902 (9th Cir. 2007) (approving use of agent to decode drug jargon, but not to provide lay interpretations).

1    illegitimate and impermissible substitution of expert opinion for factual evidence."[30]

2         It appears that Agent Carr may be qualified to offer testimony about these topics.  His

3    qualifications are on par with those of experts whom the circuit courts have found qualified.  Carr

4    has spent the last 17 of his 25 years with the Bureau of Alcohol, Tobacco, and Firearms investigating

5    OMGs.  He has been a case agent; he has interviewed confidential informants, undercover agents,

6    motorcycle gang members, and ex-members, and their wives, girlfriends, and associates.[31]  He has

7    gone undercover with two OMGs and instructed at—and attended—national and international

8    seminars on OMGs.[32]  He has also testified in the California and Nevada courts as an OMG expert.[33]

9         Rule 702 charges the district "court with assuring that expert testimony 'rests on a reliable

10   foundation and is relevant to the task at hand.'"[34]  But, based on the evidence before the court at this

11   time, I cannot conclusively determine that Carr's testimony about the Vagos organization rests on a

12   reliable foundation.  Carr's statement of qualifications describes his 25-year career with the ATF and

13   extensive training in firearms, narcotics, and OMGs, but it does not even mention the Vagos

14   organization.  Although Carr states that he was a fully patched member of an OMG, he does not

15   identify it, nor does he provide a basis for the court to conclude that his unique knowledge gained

16   during his career gives him the insight he needs on the Vagos operations to provide the Vagos-

17   specific testimony that the government has disclosed in these few, relevant categories.  Accordingly,

18   I reserve my ruling on the admissibility of Carr's opinions on the limited topics of: (1) the Vagos

19   organizational structure and hierarchy; (2) the obligation of Vagos members and members of other

20   clubs in the Confederation of Clubs to pay fees, dues, and taxes, and what is meant by these terms

21   and concepts; and (3) the national and international presence of the Vagos and its leadership

---

23   [30] *Mejia*, 545 F.3d at 190.

24   [31] Doc. 124-1 at 1.

25   [32] *Id*.

26   [33] *Id*. at 2.

27

28   [34] *United States v. Hermanek*, 289 F.3d 1076, 1093 (9th Cir. 2002) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)).

1 structure. This ruling is reserved until after I conduct an evidentiary hearing on Carr's qualifications

2 to provide testimony in these areas. I grant the motion to exclude all other proposed opinions by this

3 expert.

4                                                   **Conclusion**

5        Accordingly, IT IS HEREBY ORDERED that the motions in limine to preclude Special

6 Agent John Carr's expert testimony [**Docs. 126, 147**] and objections to the government's use of

7 Special Agent Carr's testimony [**Doc. 138**] **are GRANTED IN PART, DENIED IN PART,**

8 **SUSTAINED IN PART, AND RESERVED IN PART** as follows:

9        •        The court defers its ruling on the admissibility of Agent Carr's testimony on the

10                limited topics of (1) the structure and hierarchy of the Vagos; (2) the obligation of

11                Vagos members and members of other clubs in the Confederation of Clubs to pay

12                fees, dues, and taxes, and what is meant by these terms and concepts; and (3) the

13                national and international presence of the Vagos and its leadership structure until after

14                an evidentiary hearing on Agent Carr's qualifications to offer opinion testimony on

15                these topics; and

16        •        Agent's Carr's proposed expert testimony on all other topics is excluded.

17        IT IS FURTHER ORDERED that **Coleman, Kane, and Panter's joinders [Docs. 127, 131,**

18 **137]** in McNamara's motion in limine to exclude Agent Carr's expert testimony [Doc. 126] **are**

19 **GRANTED** to the extent set forth above.

20        IT IS FURTHER ORDERED that **Coleman's joinders [Docs. 149, 161, 166]** in Carr's

21 motion in limine, objections to the government's use of Agent Carr's testimony, and reply in support

22 of the motion in limine [Docs. 138, 147, 165] **are GRANTED** to the extent set forth above.

23        IT IS FURTHER ORDERED that **the court will conduct an evidentiary hearing on**

24 **Wednesday, July 8, 2015, at 9:30 a.m.** regarding Agent Carr's qualifications to offer expert opinion

25 testimony on the limited topics of (1) the structure and hierarchy of the Vagos; (2) the obligation of

26 Vagos members and members of other clubs in the Confederation of Clubs to pay fees, dues, and

27 . . .

28

taxes, and what is meant by these terms and concepts; and (3) the national and international presence

of the Vagos and its leadership structure.

DATED June 19, 2015.

_____
Jennifer A. Dorsey
United States District Judge